UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LOYSHANE LILES,** | ) | Case No. 3:06 CV 1917 |
| | ) | |
| Petitioner, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **ROB JEFFRIES**, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas. |
| | ) | |

The matter of LOYSHANE LILES's petition under 28 U.S.C. §2254 has been referred to the undersigned for report and recommended disposition. Liles states in his petition that he was convicted on June 24, 2003 and sentenced on March 25, 2004 to serve a total of 16 years following his guilty pleas in the Allen County Court of Common Pleas to drug-trafficking charges.[1] He further states that he took no timely direct appeal.

Following sentencing Liles moved for delayed appeal under Ohio R. App. 5(A) on August 12, 2004, which was denied on October 6, 2004 (Respondents's Ex. D, E). This motion was denied for lack of "sufficient reason" to explain the delay. Liles later on February 7, 2005 again sought leave to file delayed appeal and leave was once again denied on April 13, 2005. (Respondent's Ex. F, G). Liles took a timely counseled appeal to the Ohio Supreme Court, which on September 7, 2005 dismissed the appeal as not involving any substantial constitutional question. (Respondent's Ex. H; *State v. Liles*, 106 Ohio St.3d 1508, 833 N.E.2d 1249, 2005-Ohio- 4605 (2005)). The Ohio Supreme

---

[1] Respondent explains that first Liles plea-bargained to his convictions but then "disappeared" and was apprehended months later. The state trial court then sentenced him to 16 years imprisonment.

2

Court denied reconsideration on October 26, 2005. See *State v. Liles*, 106 Ohio St.3d 1560, 836 N.E.2d 583, 2005-Ohio-5531 (2005).

Liles returned to the trial court with his state post-conviction petition under Ohio Rev. Code § 2953.21 (Respondent's Ex. J) The trial court denied this petition on August 4, 2006 and no appeal was taken. A few days prior to receiving that decision, Liles submitted his federal habeas corpus petition under 28 U.S.C.§2254, which is signed and dated August 2, 2006.[2]

---

[2] August 2, 2006 serves as the filing date under the prison "mailbox rule" from *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). A *pro se* petition is treated as having been filed on the date certified it was placed in the prison mailing system, which approximates the date the petition was surrendered to prison authorities for mailing. See *Miller v. Collins*, 305 F.3d 491, 497-498 & n. 8 (6th Cir. 2002). Decisions from the Sixth Circuit have accepted a signature date on the habeas petition as evidence when it was delivered to prison authorities. E.g., *Wampler v. Mills*, 60 Fed. Appx. 594, 596 (6th Cir. Apr. 2, 2003); *Goins v. Saunders*, 2006 WL 3334947 *1 n. 1 (6th Cir. Nov. 15, 2006).

*Untimeliness:*

Respondent contends that Liles's petition is untimely filed under 28 U.S.C. §2244(d).[3] The burden for this argument falls upon respondent. See *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). The undersigned agrees with respondent's conclusion, but computes the time period under the statute differently. The "1-year period of limitation" contained in 28 U.S.C. §2244(d)(1)(A), runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Respondent concedes that the calculation for Liles' "1-year period" commenced March 4, 2004, his sentencing date. Since Liles did not seek a timely direct appeal within 30 days as required by Ohio R. App. P. 4(A), that 30-day period expired on April 3, 2004, but since that date fell on a Saturday, the statute of limitations began to run on April

---

[3] 28 U.S.C. §2244(d) reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

3:06 CV 1917                                                            4

5, 2004. See *DiCenzi v. Rose*, 452 F.3d 465, 469 (6th Cir. 2006) (statute begins to run with expiration of Ohio R. App. P 4(A)'s time to appeal); *Bronaugh v. Ohio*, 235 F.3d 280, 282 (6th Cir. 2000) (court applies Fed. R. Civ. P. 6(a) in computing time). Thus, the period of limitations began to run with April 5, 2004, "the expiration of the time for seeking such [direct] review," and ran uninterrupted through August 12, 2004. By that time **118 days** had elapsed. Respondent calculates that the "1-year period" did not resume to run again until after the 45 day time to appeal denial of the Ohio R. App. P. 5(A) motion on November 22, 2004 (allowing for the weekend).

Motions for delayed appeal in Ohio's courts may toll the statute of limitations under 28 U.S.C. §2244(d)(2), but are not part of the direct appeal process for purposes of 28 U.S.C. §2244(d)(1). See *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001); *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006). The post-conviction motion remained "pending," "until the application has achieved final resolution through the State's post-conviction procedures[.]" *Carey v. Saffold* , 536 U.S. 214, 219-220, 122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002).

Respondent then neglects to consider the subsequent motion for delayed appeal and the state post-conviction proceeding under Ohio Rev. Code 2953.21. Apparently respondent believes that the court should not consider these legitimate state procedures for tolling purposes citing a case about prisoners' inventive legal processes used to stall state proceedings. See *Williams v. Brigano,* 2000 WL 1871682, *1 (6th Cir. 2000). However, delayed appeal and state post-conviction relief are orthodox legal procedures. This explanation should not be necessary.

3:06 CV 1917                                                  5

Respondent next raises the issue of "proper" filing of the final two collateral matters. Respondent is correct they must be "properly filed." See *Keenan v. Bagley*, 400 F.3d 417, 419-20 (6th Cir. 2005)("[A]n application is '*properly*' filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings); *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000). Liles' second motion for delayed appeal was arguably *res judicata*.[4] However, this legal concept has no bearing on whether the document was "properly filed." See *Lucas v. Carter*, 46 F. Supp. 2d 709, 712 (N.D. Ohio 1999). In any event, the state appellate court denied the second motion for lack of sufficient reason to excuse the delay (Respondent's Ex. G). Likewise, the state post-conviction petition was not dismissed as untimely but on the trial court's conclusion that Liles' arguments raised under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), were cognizable on direct appeal only, and not on collateral review. (Respondent's Ex. K).

The "1-year period" recommenced the day after the decision denying delayed appeal became final beginning on November 23, 2004, and ran to the filing date of the second motion for delayed appeal on February 7, 2005 for another **77 days**. This period then ran from October 26, 2005 when the Ohio Supreme Court denied reconsideration. At this point in time there were **170 days** remaining, and the period ran unabated until **April 14, 2006.** Consequently, Liles' petition with its presumptive filing date of August 2, 2006 is untimely.

---

[4] "Res judicata bars successive App.R. 5(A) motions when the appellate court has considered and decided the merits of a previous motion. *State v. Williams*, Franklin App. No. 04AP-405, 2004-Ohio-3559, at ¶ 3, citing *State v. Jones* (Dec. 16, 1993), Franklin App. No. 93APA09-1261."

*State v. Ellis*, 2005 WL 3047431, 1 (Ohio App. 10 Dist.)

3:06 CV 1917                                       6

After the expiration of this period of limitation, Liles filed for state post-conviction relief on July 31, 2006 . Once the "1-year period" has run though, it cannot be restarted or retriggered by subsequent state court proceedings. See *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (Ohio R. App. P. 26(B)); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (delayed appeal under Ohio R. App. P. 5(A)); *Bronaugh v. Ohio*, 235 F.3d 280, 286-87 (6th Cir. 2001) (Ohio App. R. 26(B)). Since the time limitation had previously expired, this subsequent collateral proceeding is inconsequential.

*Impediment to filing or Discovery of Factual Predicate:*

Analysis of respondent's argument cannot rest on this point alone. Liles' may counter this by showing impediment to filing (See 28 U.S.C. §2244(d)(1)(B)), newly recognized constitutional right (See 28 U.S.C. §2244(d)(1)(C)) new evidence (See 28 U.S.C. §2244(d)(1)(D)) or equitable tolling (See *Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (2007)).Liles does not argue for equitable tolling, but liberally construing his contentions it appears he seeks to extend the time limit for lack of knowledge of the right to appeal due to ineffective assistance of counsel and newly recognized constitutional rights under *Blakely*.

Liles begins with his argument that his untimeliness is excused by the failure of appointed counsel to file the appeal. (Traverse pg. 2). Liles' argues in his petition that he was not informed of the right to appeal his sentence (Grounds I & II). This argument could be evaluated as a matter governed by §2244(d)(1)(D), as it was in *DiCenzi* insofar as knowledge of the right to appeal is concerned, or a State-created impediment to filing under §2244(d)(1)(B). Impediment to filing must

3:06 CV 1917                                               7

be created by state action, and state action includes deficient performance by defense counsel. See *Winkfield v. Bagley*, 66 Fed. Appx. 578, 582 (6th Cir. May 28, 2003), *cert. denied*, 540 US. 969 (2003); *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). "Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition." *Dunker v. Bissonnette*, 154 F.Supp.2d 95, 105 (D. Mass. 2001); *Winkfield v. Bagley* 66 Fed. Appx. at 583; *Colwell v. Tanner*, 79 Fed. Appx. 89, 93, 2003 WL 232003 (6th Cir. 2003). Just as in *Winkfield,* Liles' fails to establish a causal connection to his federal habeas petition. He demonstrates, "[n]o connection . . . to ineffective assistance and [his] ability to file a federal habeas petition, [and] [t]he fact that [he]was able to file his Rule 5(A) motion for a delayed appeal while the alleged impediment still existed . . . also suggests that [Liles] was not prevented . . . from timely filing his habeas petition." *Winkfield v. Bagley* 66 Fed. Appx. at 583.

Analysis under §2244(d)(1)(D) requires petitioner to show due diligence under the circumstances in discovering the right to an appeal. See *DiCenzi,* 452 F.3d at 469-71. Quoting from the Second Circuit, the court explained, "The proper task in the case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal]. After that date, petitioner was entitled to further delay . . . so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence." *DiCenzi*, 452 F.3d at 470 quoting *Wims v. U.S.*, 225 F.3d 186, 190 (2nd Cir. 2000). Review of the trial court's sentencing considerations included the fact that Liles was 29 year of age and had a prior criminal history (Respondent's Ex. C) His criminal history was used as an enhancing sentencing factor under Ohio Rev. Code §2929.12(D) and §2929.14(B). He negotiated his charges

3:06 CV 1917 8

from a multi-count indictment to two counts with a recommended sentence of seven years. (See Memorandum in Support of Delayed Appeal, Respondent's Ex. F). In his counseled second motion for delayed appeal counsel states Liles did not learn of his appeal rights until he "met with other [prisoners] engaging in similar appeals."

Given the situation where Liles had understood that a sentence of seven years would be recommended and the state trial court imposed a sentence of 16 years, it is surprising that he waited six months until August 12, 2004, to appeal. When he did file his delayed appeal in August 2004, he used pre-printed motion and affidavit forms which apparently were made available to him at the state prison in addition to the services of a notary public for his affidavit. (Respondent's Ex. D). Liles does not enlighten the court on any reason for delay to simply complete his name and case identifying information on the pre-printed motion form or fill-in case identifying information and reasons for failure to perfect an appeal in the blank space appearing under ¶ 2 of the pre-printed affidavit form. A duly diligent prisoner would have prosecuted his appeal within 30 days of confinement under these circumstances where the means to appeal were readily available and he admits he was assisted by other prisoners. It is therefore reasonable to commence the "1-year period" with April 25, 2004, which does not significantly alter the timeliness calculation which for purposes of §2244(d)(1)(A) commenced on April 5, 2004. Neither §§2244(d)(1)(B) or (D) consequently render Liles' petition timely

*New Constitutional Right:*

3:06 CV 1917                                        9

Finally, under §2244(d)(1)(C) the "1-year period" can be reset to "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Liles argues that the state courts refused to resentence him in accordance with *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *State v. Foster*, 109 Ohio St.3d 1, 2006 - Ohio - 856 (2006). On June 24, 2004 (after time had expired for Liles to timely appeal) the Supreme Court announced its decision In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which reaffirmed its position that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). What changed in *Blakely* from *Apprendi* was the definition of "statutory maximum" sentence from a penalty enhancing the sentence beyond the prescribed statutory maximum to "the maximum [the court] may impose *without* any additional findings." *Blakely v. Washington*, 542 U.S. at 303-304, 124 S.Ct. at 2537  A violation of the Sixth Amendment right to trial by jury results "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' *Bishop, supra*, §87, at 55, and the judge exceeds the proper authority." *Blakely v. Washington*, 542 U.S. at 303-304, 124 S.Ct. at 2537; and see *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 860, 166 L.Ed.2d 856 (2007).

It is apparent that Liles is attempting to overturn his state convictions by persuading this federal court that the Ohio Supreme Court's 2006 decision in *State v. Foster*, 109 Ohio St.3d 1, 845

3:06 CV 1917                                              10

N.E.2d 470, 2006 - Ohio - 856 (2006), *cert. denied* - U.S. -, 127 S.Ct. 442, 166 L.Ed.2d 314 (2006), should have been applied in state court. The Ohio Supreme Court in *Foster*, evaluated the state's sentencing scheme in light of the holdings of the U.S. Supreme Court in *Apprendi*, *Blakely*, and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), The Ohio Supreme Court determined that "Ohio's felony, sentencing plan is a "hybrid" of determinate and indeterminate sentencing, (*Foster*, 109 Ohio St.3d at 12), and, the court severed the determinate aspects of the system. *Id.* at 17. Following the lead of state supreme court decisions in Indiana and New Jersey, (*Foster*, 109 Ohio St.3d at 27 n.98), the Ohio Supreme Court eviscerated § 2929.14(B)'s presumption in favor of a minimum term and severed § 2929.14(E)'s fact-finding requirements prior to imposing consecutive sentences. *Id.* at 20. The Ohio Supreme Court struck down the grounds that permitted judges to impose heightened sentences only after engaging in additional fact-finding found unconstitutional in *Blakely*. *Foster,* at 25.

*State v. Foster* may have set out new constitutional principles for Ohio, but that state decision did not express a "newly recognized right by the Supreme Court." The reference under §2244(d)(1)(C) to "the Supreme Court" was clearly intended to refer to the Supreme Court of the United States. *State v. Foster* was an extrapolation of *Blakely* and *Booker* that struck down Ohio's legislatively mandated minimum sentences. This state court ruling was not recognition by the Supreme Court of the United States of a new rule. The reasoning exposited in *Foster* was derived from the reasoning of two other state supreme courts.

3:06 CV 1917                                    11

The death blow to Liles' sentencing arguments, however, is that *Blakely*'s principles are procedural rules which do not have retroactive effect in collateral review of convictions which became final prior to their announcement. *Humphress v. U.S.*, 398 F.3d 855 (6th Cir.2005), *cert. denied*, 546 U.S. 885, 126 S.Ct. 199, 163 L.Ed.2d 190 (2005); *Valentine v. U.S.*, 488 F.3d 325, 329-31 (6th Cir.2007).  In short, there is a total lack of a "constitutional right. . .  made retroactively applicable to cases on collateral review" to reset the "1-year period " to commence with the June 2004 decision in *Blakely*.

*Miscellaneous:*

Liles argues that respondent failed to raise any legal defense to the allegation in his petition and this constitutes  waiver. Respondent raised not only the untimeliness of the petition , but also procedural default, so either way the district court could not address the merits of Liles' grounds.

The respondent's answer/ return is adequate and does not constitute a default.

*Procedural Default:*

In a separate argument respondent contends that Liles waived all but his fifth and seventh grounds. Liles presented the  following grounds for relief:

1. Right to appeal--due process.

2. Ineffective assistance of trial counsel.

3:06 CV 1917                                             12

    3. Trial court violated the defendant's right to remain silent, violated the defendant's Miranda rights.

    4. Ineffective assistance of counsel.

    5. Due Process – equal protection.

    6. Violation against protections of double jeopardy.

    7. Violation of the right to a jury determining the findings that increase a Defendant's sentence beyond the maximum statutory penalties.

    Although Liles presented multiple issues to the trial court and state appellate court, only once did he attempt to present propositions of law to the Ohio Supreme Court in his appeal from the second denial of leave to appeal (Respondents Ex. H). There he presented two propositions of law, the first, objecting to consecutive sentencing allegedly in violation of the state sentencing scheme, and the second, objecting to the 16 year sentence as enhancement above the statutory maximum, violation of due process, the right of presentment to a grand jury, violation of the requirement of proof beyond a reasonable doubt, and violations of the principles announced in *Apprendi* and *Blakely*.

    The substance of the federal claims submitted for habeas corpus review must be "fairly presented" to the state's highest court because only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights. See *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Coleman v. Thompson*, 501 U.S. 722, 735, 109 S.Ct.

3:06 CV 1917                                       13

2546, 2557, 115 L.Ed.2d 640(1991).  "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system."  *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003), quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Liles' fifth and seventh grounds have their foundation in the issues raised to the state's highest court.  However his remaining five grounds were never "fairly presented" to the state courts.  A failure to fairly present the federal ground to the state's highest court constitutes an adequate and independent state procedural rule barring habeas review.  See  *Leroy v. Marshall*, 757  F.2d 94, 99 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied* 546 U.S. 821 (2005).

The bar against federal review of procedurally defaulted claims in the state courts serves to protect the integrity of the federal exhaustion rule "by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state court's having had the opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S.Ct. 1728, 1732, 144 L.E.d2d 1  (1999); see also *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); and *Edwards v. Carpenter*, 529 U.S. 446, 452-53, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000) (discussing the "inseparability" and "interplay" of the exhaustion rule and the procedural-fault doctrine in giving state courts a fair opportunity to pass upon petitioner's claims).

3:06 CV 1917                                                                 14

A procedural default may be excused by a demonstration of" cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004), quoting *Coleman v. Thompson*, 501 U.S. at 750; and see *Edwards v. Carpenter*, 529 U.S. at 451-52; *House v. Bell*, -U.S.-, 126 S.Ct. 2064, 2076, 165 L.Ed.1 (2006); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971). Liles states no "cause" to excuse the failure to present his additional five grounds to the Ohio Supreme Court, and given his negotiated guilty pleas, there is no reason to explore actual innocence. [5]

### *CONCLUSION AND RECOMMENDATION*

Accordingly, it is recommended that the petition be dismissed due to untimeliness under 28 U.S.C. §2244(d), and procedural default of all but the fifth and seventh grounds. No evidentiary hearing is required.

s/James S. Gallas
United States Magistrate Judge

Dated: August 28, 2008

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

---

[5] Respondent also argues the merits of all seven grounds, but since federal review of all but two is barred due to procedural default, and the petition is untimely, the court should resist that invitation.